UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| CARRIE RAHAT SAMA, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. G-09-69 |
| | § | |
| EDWARD HANNIGAN, *et al*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER OF DISMISSAL

Carrie Rahat Sama, (TDCJ # 1362948) an inmate in custody of the Texas Department of Criminal Justice-Correctional Institutions Division, (TDCJ-CID), has filed a complaint under 42 U.S.C. § 1983, alleging that the defendants were deliberately indifferent to her serious medical needs. The UTMB defendants, Dr. Edward Hannigan and Dr. Michelle Benoit, have moved for summary judgment. (Doc. # 20) . Sama has filed a response (Doc. # 21); the Defendants have filed a reply to Sama's response. (Doc. # 24). Based on the pleadings, the motions, the summary judgment record and the applicable law, this court grants the Defendants' motion for summary judgment. The reasons for this ruling are stated below.

I.      Background

A.      Plaintiff's Allegations

Sama is currently incarcerated in the TDCJ-CID at the Lane Murray Unit in Gatesville. Sama alleges that the Defendants were deliberately indifferent to her serious medical needs when they surgically removed her remaining ovary without her consent. Sama began having gynecological problems on or before her incarceration in 2006, and underwent "multiple abdominal surgeries," including the removal of one ovary. On April 12, 2007, a cone procedure

was performed on her cervix, after which she was told that all cancer cells had been removed. On May 5, 2007, she had another CT scan which "showed no cancer," but "due to the aggressive form of cancer, adenocarcinoma, a hysterectomy was suggested."   (Doc. # 8, p. 5).   Sama consented to the surgery, but with the stipulation that under no circumstances was her remaining ovary to be removed.  (Sama and her husband hoped to have a child using a surrogate mother.). "All members of the surgical team understood this nonconsent of ovary removal and agreed to leave her one ovary."   *Id.*   Sama's ovary was removed during the surgery, causing Sama emotional pain and suffering.  Sama seeks compensatory and punitive damages.

**B.     The Summary Judgment Evidence**

In support of their motion for summary judgment evidence (Doc. # 20), the Defendants have filed the following exhibits:

Exhibit A:     The Affidavit of Edward Hannigan, M.D.

| | |
|---|---|
| Exhibit 1: | The Curriculum Vitae of Dr. Hannigan |
| Exhibit 2: | Radiology record: Transvesicular and endovaginal pelvic ultrasound |
| Exhibit 3: | History & Physical Examination-Outpatient Surgery; |
| Exhibit 4: | Progress Notes (April 12, 2007) |
| Exhibit 5: | Operative Record (April 12, 2007) |
| Exhibit 6: | Surgical Pathology Report |
| Exhibit 7: | History & Physical Examination-Outpatient Surgery |
| Exhibit 8: | Outpatient Clinic Note (May 3, 2007); |
| Exhibit 9: | Disclosure and Consent Medical and Surgical Procedures (May 3, 2007) |
| Exhibit 10: | Radiology Record: CT Scan of the Abdomen and Pelvis with IV Contrast |
| Exhibit 11: | Progress Notes (May 7, 2007) |
| Exhibit 12: | Operative Report (May 7, 2007) |
| Exhibit 13: | Surgical Pathology Report |
| Exhibit 14: | Discharge Summary |
| Exhibit 15: | Outpatient Clinic Note |
| Exhibit 16: | Outpatient Clinic Note |
| Exhibit 17: | Physicians Note and Residents Note |

Exhibit B:    The Affidavit of Michelle Benoit, M.D.

Exhibit C-1:    The Affidavit of S.R. Lewis, Jr.

Exhibit C-2:    The Affidavit of Philip Chacko, custodian of records of the UTMB Hospitals.

Sama's medical records reveal that she was diagnosed with endocervical adenocarcinoma *in situ* and was referred to the Benign GYN Service at UTMB on April 10, 2007.   On April 12, 2007, cervical conization was performed, which revealed Sama had an invasive cancer of the cervix (endocervical adenocarcinoma) with indications of metastatic spread of the cancer.   Dr. Edward Hannigan, a renowned gynecologic oncologist (see Doc. #20, Exh. 1. pp.  1-13), first met and examined Sama on April 24, 2007, when she was referred to the GYN Tumor Service. Sama expressed her desire to conserve her remaining ovary, and the Defendants agreed to try and accommodate her wishes.  (Doc. # 20, Exh. A, p. 4).  It was also explained and made clear to her that the decision regarding the fate of her ovary would be made intraoperatively - in other words, if anatomic constraints made it difficult to save the ovary, it would be sacrificed.   Sama consented to the terms.  (See Doc. #20, Exh. 9, Bates 119-121).  During surgery, the Defendants made the decision to remove Sama's ovary.  Their decision was based on the fact that there were significant adhesions from her multiple prior surgeries which made the operative procedure difficult, and the ovary and fallopian tube were significantly abnormal with multiple inclusion cysts and endometriosis cysts.  Defendants were unable to identify any grossly viable, normal ovarian tissue - the ovary was non-functional.  Moreover, "the abnormal appearance of the ovary also raised the possibility of metastatic disease in the ovary."  In the Defendants' opinion, "it was in the patient's best interest to remove the ovary."  (Doc. # 20, Exh. A, p. 5).

## II.    The Legal Standard on Summary Judgment

The Defendants' motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure.  Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing of the existence of an element essential to the party's case, and on which that party will bear the burden at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party has the burden of showing that summary judgment is appropriate.  *See Martco Ltd. Partnership v. Wellons*, *Inc.,* 588 F.3d 864, 871 (5th Cir. 2009) (citing *Celotex*, 477 U.S. at 323).  Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c)(2); *Celotex Corp.,* 477 U.S. at 322-23.

If the moving party meets its initial burden, "[t]he nonmoving party 'must identify specific evidence in the record and articulate the manner in which that evidence supports that party's claim.'"  *Peterson v. City of Fort Worth, Tex.,* 588 F.3d 838, 844 (5th Cir. 2009) (quotation omitted).  The non-movant must do more than simply show that there is some "metaphysical doubt" as to the material facts.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 478 U.S. 574, 587 (1986).  "A fact is material only if its resolution would affect the outcome of the action, ... and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.'" *Wiley v. State Farm Fire and Cas. Co.,* 585 F.3d 206, 210 (5th Cir. 2009).

In deciding whether a genuine and material fact issue has been created, the facts and inferences to be drawn from them must be reviewed in the light most favorable to the nonmoving

party.  *Matsushita Elec. Indus. Co.,* 478 U.S. at 587-88.  However, factual controversies are resolved in favor of the non-movant "only 'when both parties have submitted evidence of contradictory facts.'"  *Alexander v. Eeds*, 392 F.3d 138, 142 (5th Cir. 2004).  The nonmovant's burden is not met by mere reliance on the allegations or denials in the non-movant's pleadings. *Diamond Offshore Co. v. A & B Builders, Inc.,* 302 F.3d 531, 545 n. 13 (5th Cir. 2002). Likewise, "conclusory allegations" or "unsubstantiated assertions" do not meet the non-movant's burden.  *Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co.,* 530 F.3d 395, 399 (5th Cir. 2008).  Instead, the nonmoving party must present specific facts which show "the existence of a genuine issue concerning every essential component of its case."  *American Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Int'l.* 343 F.3d 401, 405 (5th Cir. 2003).

### III.   <u>The Claims Against the Defendants in Their Individual Capacities</u>

The Defendants assert that they are entitled to qualified immunity as a matter of law because Sama failed to allege a constitutional violation and because the evidence shows that their actions were objectively reasonable in light of clearly established law.

Under the doctrine of qualified immunity, public officials and employees acting within the scope of their authority are shielded "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional law of which a reasonable person would have known."  *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Pearson v. Callahan,* ___ U.S. ___, 129 S.Ct. 808, 815 (2009).  The Supreme Court has characterized the doctrine as protecting "all but

the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

To determine whether a public official is entitled to qualified immunity for an alleged constitutional violation, reviewing courts typically conduct a two-prong analysis that was established in *Saucier v. Katz*, 533 U.S. 194 (2001), *overruled in part by Pearson*, ___ U.S. ___, 129 S.Ct. at 817.  The first prong of the *Saucier* analysis asks whether, taken in the light most favorable to the party asserting the injury, the facts alleged show that the official's conduct violated a constitutional right.  *See Scott v. Harris*, 550 U.S. 372 (2007) (citing *Saucier*, 533 U.S. at 201).  "If, and only if, the court finds a violation of a constitutional right, 'the next, sequential step is to ask whether the right was clearly established ... in light of the specific context of the case.'" *Id.* (quoting *Saucier*, 533 U.S. at 201).  If there is evidence to support the violation of a constitutional right, the second prong of the *Saucier* analysis asks whether qualified immunity is appropriate, nevertheless, because the defendant's actions were objectively reasonable "in light of clearly established law at the time of the conduct in question."  *Hampton Co. Nat'l Sur., L.L.C. v. Tunica County, Miss.,* 543 F.3d 221, 225 (5th Cir. 2008) (quoting *Freeman v. Gore*, 483 F.3d 404, 410-11 (5th Cir. 2007)).

The Supreme Court has recently clarified that the two-prong protocol established in *Saucier*, while often appropriate, is no longer mandatory for resolving all qualified immunity claims.  *Pearson*, 129 S.Ct. at 818.  Reviewing courts are permitted "to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*  Thus, the "rigid *Saucier* procedure" need not be followed in any particular sequence.  *Id.*  In this case, the Court

finds it appropriate to determine initially whether a constitutional violation occurred under the traditional two-step procedure established in *Saucier.*

In the case of a qualified immunity defense, the usual summary judgment burden of proof is altered. *See Gates v. Texas Dep't of Protective and Regulatory Servs.,* 537 F.3d 404, 419 (5th Cir. 2008). An official need only plead his good faith, which then shifts the burden to the plaintiff, who must rebut the defense by establishing that the official's allegedly wrongful conduct violated clearly established law. *See Mitchalik v. Hermann*, 422 F.3d 252, 262 (5th Cir. 2005) (citing *Brazan v. Hidalgo County*, 246 F.3d 481, 489 (5th Cir. 2001)). The plaintiff bears the burden of negating the defense and cannot rest on conclusory allegations and assertions, but must demonstrate genuine issues of material fact regarding the reasonableness of the official's conduct. *Mitchalik*, 422 F.3d at 262; *see also Ontiveros v. City of Rosenberg, Tex.,* 564 F.3d 379, 382 (5th Cir. 2009) (noting that, to avoid summary judgment on qualified immunity, a plaintiff need not present "absolute proof, but must offer more than "mere allegations.") (quotation omitted).

### A.     The Denial of Adequate Medical Care Claim

The Eighth Amendment prohibition against cruel and unusual punishment forbids deliberate indifference to the serious medical needs of prisoners. *Estelle v. Gamble*, 429 U.S. 97 (1976). Deliberate indifference to the serious medical needs of prisoners may violate the Eighth Amendment, whether the indifference is manifested by prison doctors or by prison guards and whether it is intentionally denying or delaying access to medical care. *Id*., *Harris v. Hegmann*, 198 F.3d 153, 159 (5th Cir. 1999). "Deliberate indifference is an extremely high standard to meet," *Domino v. Texas Dep't of Criminal Justice*, 239 F.3d 752, 756 (5th Cir. 2001), and requires a showing of unnecessary and wanton infliction of pain, rising "to the level of egregious

intentional conduct." *McCormick v. Stalder*, 105 F.3d 1059, 1061 (5th Cir. 1999); *Gobert v. Caldwell*, 463 F.3d 339, 351 (5th Cir. 2006).

A claim that medical personnel made an incorrect diagnosis does not state a cause of action for deliberate indifference in providing medical care. *Domino*, 239 F.3d at 756 (citing *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985)). A decision to provide additional or different treatment "is a classic example of a matter for medical judgment" rather than a basis for an Eighth Amendment claim. *Estelle*, 429 U.S. at 107. An inmate's disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Norton v. Dimizana*, 122 F.3d 286, 292 (5th Cir. 1997). A plaintiff must allege and raise a fact issue as to whether prison officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *See Varnado v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991). "Unsuccessful medical treatment, acts of negligence or medical malpractice do not constitute deliberate indifference." *Gobert v. Caldwell*, 463 F.3d 339, 347 (5th Cir. 2006). Deliberate indifference is especially difficult to show when the inmate has been provided with ongoing medical treatment. The Fifth Circuit has specifically noted that in such situations the only remaining logical possibility for liability is that the physician fiendishly and deliberately set out to injure rather than benefit the inmate. *Bass v. Sullivan*, 550 F.2d 229 (5th Cir.), *cert. denied*, 434 U.S. 864 (1977). This clearly did not occur in this case.

The record and facts show that as a matter of law, the Defendants did not act with deliberate indifference to Sama's serious medical needs by removing her ovary. The medical records and the affidavits of Dr. Hannigan and Dr. Benoit reveal that Sama was examined by the Defendants when she was referred to the GYN Tumor Service. Numerous tests were performed

to confirm that she was an appropriate surgical candidate and she was counseled pre-operatively regarding the potential need to remove the ovary.  She signed a consent form agreeing to same. She was operated on by the Defendants who, with over 50 years of experience between them, determined that removal of her ovary was in her best interest, and who removed the adhesions and cancerous tissue in her abdomen and most likely saved her life.  Sama clearly received excellent and timely care.  She has wholly failed to identify facts raising a fact issue as to whether Dr. Hannigan or Dr. Benoit were deliberately indifferent to her serious medical needs, and the record is devoid of any facts showing such.

## IV.    CONCLUSION

Sama has failed to rebut the Defendants' affirmative defense of qualified immunity by showing the existence of a disputed fact issue material to determining whether the defendants were deliberately indifferent to her serious medical needs.  *See Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir. 1997).  The Defendants' motion for summary judgment is **GRANTED** and this action is **DISMISSED** with prejudice as frivolous and for failure to state a claim for which relief can be granted.

All pending motions are **DENIED** as moot.

**The Clerk shall provide a copy of this order by regular mail, facsimile transmission, or e-mail to: (1) the TDCJ - Office of the General Counsel, P.O. Box 13084, Austin, Texas, 78711, Fax Number (512) 936-2159; (2) the Inmate Trust Fund, P.O. Box 629, Huntsville, Texas 77342-0629, fax: 936-437-4793; and (3) the District Clerk for the Eastern District of**

**Texas, Tyler Division, 211 West Ferguson, Tyler, Texas, 75702, Attention: Manager of the Three-Strikes List.**

  SIGNED at Houston, Texas this 10th day of August, 2010.

               _____

               Kenneth M. Hoyt
               United States District Judge